```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION


PEGGY JO BOLIVER                                      PLAINTIFF

VS.                              CIVIL ACTION NO. 3:04CV750BS

BELLSOUTH PENSIONS SERVICE
CENTER, BELLSOUTH AFFILIATE
SERVICE CORPORATION and
BELLSOUTH TELECOMMUNICATIONS,
INC.                                                 DEFENDANTS
```

## OPINION AND ORDER

This cause is before the Court on the following Motions:

1. Defendants' Motion for Summary Judgment, filed on January 16, 2006, under docket entry no. 20;

2. Plaintiff's Motion for Summary Judgment ("Cross-Motion for Summary Judgment"), filed on January 17, 2006, under docket entry no. 21; and

3. Plaintiff's Motion to Strike the Declarations of Helen Peavler ("Motion to Strike"), filed on January 30, 2006, under docket entry no. 29.

Having considered the Motions, Responses, Rebuttals and all attachments to each, as well as supporting and opposing authority, the Court finds as follows:

1. Defendants' Motion for Summary Judgment is well taken and should be granted;

2.  Plaintiff's Cross-Motion for Summary Judgment is not well taken and should be denied; and

3.  Plaintiff's Motion to Strike is well taken in part and not well taken in part and should be granted in part and denied in part.

### I.  Factual Background and Procedural History

This case arises out of a denial of benefits under a pension plan covered by the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Through this action, Plaintiff Peggy Jo Boliver seeks Disability Pension benefits under a pension plan provided by her former employer, South Central Bell Telephone Company ("SCB").

On August 19, 1957, Plaintiff began her employment with SCB where she was employed for eighteen years until her employment was terminated on November 23, 1975. Plaintiff alleges that prior to her termination, from May 1974 until November 23, 1975, she was totally and permanently disabled due to a herniated disk. At the time of Plaintiff's termination, SBC offered a pension plan entitled "South Central Bell Telephone Company Plan for Employees' Pension, Disability Benefits, and Death Benefits, effective July 1, 1968 with Amendments to and including the Amendments effective July 18, 1974" ("the 1974 Plan"). The 1974 Plan allows an employee to collect a Disability Pension benefit under the following circumstances:

>  If you become totally and permanently disabled because of illness or an off-the job injury, you can be retired and receive a Disability Pension from the Plan if you:
> - have received 52 weeks of Sickness Disability Benefits
> - have completed at least 15 years of service by that time
>                 *and*
> - are not entitled to a Service Pension

Exhibit "C" to Declaration of Helen Peavler, attached to Defendants' Motion for Summary Judgment, BST 272.[1]

On March 27, 2003, Plaintiff filed a claim for pension benefits with Defendant Bellsouth Telecommunications, Inc ("Bellsouth"), the successor in interest to SCB. See BST 184. Subsequently, on August 12, 2003, the Bellsouth Administrative Team notified Plaintiff that her claim for "Deferred Service [or Vested] Pension" benefits under the 1974 Plan was denied. See BST 187. Plaintiff made a second application for benefits on August 28, 2003, specifically requesting Disability Pension benefits. See BST 192. On January 5, 2004, the Director-Retirement Plan denied Plaintiff's claim for Disability Pension benefits. See BST 212. Plaintiff then appealed the denial of Disability Pension benefits to the Employee's Benefit Claim Review Committee ("EBCRC") on

---

[1] The parties agree that the Administrative Record pertinent to Plaintiff's claim is Exhibit "A" to the Declaration of Helen Peavler and identified as Bates Numbers ("BST") 1-242. Hereinafter, for purposes of uniformity, the Court will only refer to the appropriate BST numbers when referencing documents within the Administrative Record.

3

February 24, 2004.[2] That appeal was denied by the EBCRC on June 7, 2004.

Aggrieved by the denial of Disability Pension benefits, Plaintiff filed this action on September 10, 2004.[3] Defendants filed their Motion for Summary Judgment on January 16, 2006, and on the next day, Plaintiff filed her Cross-Motion for Summary Judgment. On January 30, 2006, Plaintiff moved to strike the Declaration of Helen Peavler, which is attached as an exhibit to Defendants' Motion for Summary Judgment.

The three pending Motions have been fully briefed and are ripe for consideration. The Court will first address the Motion to Strike and then consider the Motion for Summary Judgment of Defendants and the Cross-Motion for Summary Judgment of Plaintiff collectively.

## II. Motion to Strike

---

[2] In the Declarations of Helen Peavler, attached as an exhibit to Defendants' Motion for Summary Judgment, Peavler, an employee of Bellsouth Affiliate Services Corporation, states that the EBCRC is a part of "Bellsouth Corporation." The Court is unable to decipher whether Peavler is referring to Bellsouth Affiliate Service Corp. or Bellsouth Telecommunications, Inc.

[3] Plaintiff appealed the denial of Deferred Service Pension benefits on October 1, 2003, and that appeal was also denied by the EBCRC. Plaintiff however does not contest the denial of Deferred Service Pension benefits in this action. Therefore, the only issue before the Court is whether Plaintiff was wrongfully denied Disability Pension benefits.

4

Plaintiff moves to strike the Declaration of Helen Peavler and all exhibits attached thereto. The exhibits attached to Declaration are described by the Defendants as:

- Exhibit A – the Administrative Record
- Exhibit B – the Summary Plan Description for the 1974 Plan
- Exhibit C – the 1974 Plan
- Exhibit D – relevant portions of the current Bellsouth Pension Plan
- Exhibit E – relevant portions of the current Summary Plan of the Bellsouth Pension Plan

See Defendants' Response to Motion to Strike, ¶¶ 2-4. Plaintiff first argues that the Declaration and accompanying exhibits should be stricken because they contain factual allegations and legal conclusions outside the Administrative Record. Second, Plaintiff contends that the Declaration and exhibits were not produced by Defendants in its Pre-Discovery Core Disclosures.

In reviewing a denial of benefits in an ERISA action, the district court should only consider the evidence that was before the plan administrator, i.e., the administrative record. Vega v. Nat'l Life Ins. Servs., 188 F.3d 287, 299 (5th Cir. 1999). After reviewing the contents of the Declaration itself, the Court finds that a portion the Declaration should be stricken. Specifically, the Court finds that ¶¶ 15 – 52 of the Declaration contains

additional fact evidence, relevant to the merits of Plaintiff's claim, that were not a part of the Administrative Record. Accordingly, the Court will not consider ¶¶ 15 – 52 in deciding the cross-motions for summary judgment.

However, the Court finds that ¶¶ 1-14 of the Declaration should not be stricken as the information contained in these paragraphs is background information that has no bearing on the substantive issue in this case. The Court further finds that all exhibits attached to the Declaration are appropriately before the Court. The Administrative Record, the 1974 Plan and the Summary Plan Description – Exhibits A, B and C of the Declaration – are clearly relevant documents which the Court must consider in deciding whether benefits were wrongfully denied. Also, the relevant portions of the current Bellsouth Pension Plan and the corresponding Summary Plan are merely offered by Defendants as evidence that the administrator had discretionary authority in determining eligibility.  Thus, Exhibits D and E are relevant to the collateral issue of what standard of review should be applied by the Court and are not offered as additional evidence on the substantive issue in this matter. Moreover, all Exhibits attached to the Declaration were provided to Plaintiff in accordance with Rule 26(a) of the Federal Rules of Civil Procedure. See Exhibit "A" to Plaintiff's Motion for Summary Judgment.

Accordingly, the Court will strike ¶¶ 15 – 52 of the Declaration of Helen Peavler from the record, but will consider the remainder of the Declaration and all exhibits attached thereto.

### III. Summary Judgment

### III.A.  Generally Applicable Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of

7

material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

**III.B. Summary Judgment Standard Applicable to ERISA Claims**

The generally applicable summary judgment rules stated above apply in cases brought under ERISA. Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 225 (5th Cir. 2004). However, the standard for reviewing the decision of the plan administrator

differs depending on whether "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).  If the benefit plan in question vests no such authority in the plan administrator, then the standard of review is *de novo*. Id.  If the plan administrator does have the discretion to determine eligibility for benefits or to interpret the terms of the plan, then the applicable standard of review is abuse of discretion. Ellis v. Liberty Mut. Assurance Co. of Boston, 394 F.3d 262, 269 (5th Cir. 2005)(citation omitted).

The above analysis of the *de novo* standard of review versus the abuse of discretion standard of review applies *only* to questions regarding "construction of the meaning of plan terms or plan benefit entitlement provisions." Vercher, 379 F.3d at 226. "[A] plan administrator's factual determinations are always reviewed for abuse of discretion[.]" Id.

However, analyzing any category of issues in an ERISA case, "[t]he existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999).  This has become known as the "sliding

9

scale standard" of review. Id.  A conflict of interest exists, and the sliding scale standard of review must be applied when "the plan administrator is self-interested, i.e., the administrator potentially benefits from every denied claim." Id. at 295.

**III.C. Applicable Standard in the Subject Case**

Plaintiff contends that a *de novo* standard of review applies because the 1974 Plan does not give the administrator discretionary authority to determine eligibility. Conversely, Defendants argue that the current Bellsouth Pension Plan, under which the benefit request was processed, gives the EBCRC discretionary authority in deciding a claim and therefore an abuse of discretion standard should apply. In light of the current standard as set forth *supra*, the Court need not decide whether the administrator had discretion. Plaintiff does not argue that the administrator's legal interpretation or construction of the terms and provisions of the 1974 Plan were erroneous. Instead, as the parties have agreed, the only substantive issue raised by the Plaintiff is whether she received fifty-two weeks of Sickness Disability Benefits before she was terminated on November 23, 1975. As Plaintiff admits in her Rebuttal, this is simply a question of fact; therefore, the Court must review this fact determination of the administrator under an abuse of discretion standard. Vercher, 379 F.3d at 226 ("[A] plan administrator's factual determinations are always reviewed for abuse of discretion. . . .").

Relying on <u>Vega</u>, Plaintiff also urges that the Court should apply a sliding scale abuse of discretion standard because the administrator of the subject claim for benefits was conflicted. In making this argument however, Plaintiff presents no evidence of a conflict of interest between the EBCRC and Bellsouth.[4] Plaintiff only makes the conclusory allegations that "the Claim Administrator in this case, Bellsouth Pension Service Center and Bellsouth Affiliate Services Corporation is the same entity or an alter ego of the insurer." Plaintiff's Motion for Summary Judgment, ¶ 11. As the United States Court of Appeals for the Fifth Circuit has explained, in the context of a corporate benefit plan, the Court should not automatically assume that a conflict of interest arises where paid personnel of a corporate defendant evaluate claims for benefits. <u>MacLachlan v. ExxonMobil Corp.</u>, 350 F.3d 472, 479 n. 8 (5th Cir. 2003). Plaintiff has the burden of producing evidence that a conflict exists, <u>Ellis v. Liberty Life Assurance Co. of Boston</u>, 394 F.3d 262, 271 n. 18 (5th Cir. 2005), and the Court

---

[4] The Court will consider the EBCRC as "the claim administrator" of the subject benefit plan. The EBCRC makes the final decision in the administrative review process and the decision of the EBCRC is the decision that will be reviewed by the Court today. <u>See</u> Peavler Dec. at ¶6. Although Defendants contend that Hewitt Associates is the third-party administrator of the plan, the record does not clarify the relationship between Hewitt Associates and the EBCRC. Moreover, the June 7, 2004, denial letter was written by Helen Peavler, an employee of Bellsouth Affilliate Services Corp. That denial letter does not reference Hewitt Associates. Thus, the Court will assume that the EBCRC exists independently of Hewitt Associates.

11

finds that Plaintiff has failed to meet this burden. The Court will therefore not apply the sliding scale abuse of discretion standard.

Accordingly, the Court will analyze the factual determination of the EBCRC under the traditional abuse of discretion standard.

### III.D. Summary Judgment Analysis

After reviewing Plaintiff's request for a Disability Pension, the EBCRC found that Plaintiff met two of three requirements for receiving a Disability Pension – she had completed fifteen years of service and was *not* entitled to a Service Pension. The EBCRC however found that Plaintiff did not qualify for the Disability Pension because there were no employment records indicating that Plaintiff had received fifty-two weeks of Sickness Disability Benefits prior to her termination. Therefore, as stated *supra*, the only issue before the Court is whether the administrator's factual determination regarding receipt of Sickness Disability Benefits was correct.

To support its finding that Plaintiff did not receive Sickness Disability Benefits for fifty-two weeks, the EBCRC relied primarily on the fact that Plaintiff's only employment records – her Service and Salary Authorization Records (BST 165-67) – failed to indicate that Plaintiff had received Sickness Disability Benefits. Rather, the EBCRC determined that the records reflected that she had taken a leave of absence from April 29, 1975, until her November 23, 1975, termination. Finally, the EBCRC concluded that an itemized

earnings statement from the Social Security Administration which reflects Plaintiff's earnings from 1957 through 1974 (BST 185-86 "earnings statement") also supported a denial of benefits.

Plaintiff urges that the Administrative Record contained ample evidence of her receiving the required Sickness Disability Benefits. As proof that she received Sickness Disability Payments for fifty-two weeks prior to her termination, Plaintiff points to the following evidence.

- Her own affidavit wherein she states that she did in fact receive fifty-two weeks of sickness disability payments. BST 216.
- A certificate and two letters, dated May 30, 1974 and May 5, 1975, executed by Dr. Lucien R. Hodges providing his opinion that Plaintiff was unable to work as a result of her back condition during the subject time period. BST 156-58
- Plaintiff's earnings statement

See Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment, pp. 5-6. Plaintiff also discredits the reliance of the EBCRC on Plaintiff's employment records by arguing that the records were incomplete. Because the records only reflect "changes in employment and pay status, not changes in benefit status," Plaintiff argues that the employment record in no way proves that she did not receive the Sickness Disability Benefits. Plaintiff's

Memorandum in Opposition to Defendants' Motion for Summary Judgment, pp. 4-5. Plaintiff further contends that the EBCRC's conclusion that Plaintiff took a leave of absence from May through November of 1975 is baseless. Because the 1974 Plan requires employees to apply for leaves longer than one month, Plaintiff asserts that she could not have taken a leave of absence as there was no such application in her employment records. Id. at 6.

After reviewing the Administrative Record, the Court finds that there is sufficient evidence in the Record such that the EBCRC did not abuse its discretion in deciding that Plaintiff was not entitled to a Disability Pension. As proof of her claim, Plaintiff only produced the earnings statement, her own affidavit, and the certificate and letters of Dr. Hodges. Although Plaintiff contends that the earnings statement advances her claim, she fails to explain how the statement is supportive. The earnings statement only shows that Plaintiff did not receive an income in the third and fourth quarters of 1974. It in no way proves that Plaintiff received Sickness Disability Benefits during that time. The Court further notes that Plaintiff did not produce an earnings statement for 1975. Moreover, Plaintiff's self-serving affidavit is less than compelling as it neither contains details that would verify her claim that she received the Sickness Disability Benefits for fifty-two weeks nor does it include a time frame in which the benefits were allegedly received. The certificate and letters from Dr.

14

Hudson are also of no relevance in proving that she actually received Sickness Disability Benefits. Dr. Hudson's opinion in those documents is evidence that Plaintiff was injured during the relevant time period, a point that Defendants have not disputed. However, the certificate and letters are not probative on the issue of whether Plaintiff received Sickness Disability Payments. Thus, the EBCRC did not abuse its discretion in rejecting the evidence presented by Plaintiff.

   The Court also finds that the EBCRC did not act arbitrarily or capriciously in relying on Plaintiff's employment records.  The Service and Salary Authorization Records were the only employment records the EBCRC had to consider. Those records indicate that Plaintiff took a leave of absence on April 28, 1975. The records also contain the following notation: "Sickness-Eligible-Other Benefits 4-29-75 to 10-28-75 to Credit." Defendants are unable to explain the meaning of this notation. But, even assuming the notation indicates that Plaintiff received Sickness Disability Benefits from April 29, 1975, through October 28, 1975, Plaintiff would have only received these benefits for five months, well short of the required fifty-two weeks. Plaintiff argues that the employment records contain no evidence that Plaintiff did not receive the fifty-two weeks of benefits; therefore, the EBCRC only speculated that benefits never accrued. Plaintiff is correct in asserting that there is no convincing evidence in the employment

15

records that proves Plaintiff did not receive the benefits. However, there is also no evidence in the employment record that indicates Plaintiff did in fact receive Sickness Disability Benefits. Again, the burden of proof is on the Plaintiff, and not Defendants, to prove that she is eligible to receive the requested benefits. Kirschenheuter v. Bd. of Trustees of The GSC-ILA Pension Plan & Trust, 341 F.Supp.2d 624, 628 (S.D. Miss. 2004). Plaintiff simply failed to prove that she received the Sickness Disability Payments for fifty-two weeks prior to her termination.

Accordingly, the Court finds that there are no genuine issues of material fact and that the EBCRC did not abuse its discretion in finding that Plaintiff was not entitled to a Disability Pension.[5]

### IV.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike the Declaration of Helen Peavler [docket entry no. 29] is well taken in part and not well taken in part and is hereby granted in part and denied in part. The Motion is granted in that ¶¶ 15 - 52 of the Declaration are stricken from the record. The Motion is denied in all other respects.

---

[5] Defendants make the alternative argument that Plaintiff's claim should be barred under the equitable doctrine of laches. However, in light of the foregoing ruling, the Court need not consider Defendants' argument.

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment [docket entry no. 20] is not well taken and is hereby denied.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [docket entry no. 19] is well taken and is hereby granted. This case is hereby dismissed with prejudice. A Final Judgment will be entered reflecting the final resolution of this matter.

SO ORDERED this the 29th day of March, 2006.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

blj